IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:12-cr-485-SI |
| v. | **OPINION AND ORDER** |
| **JON MICHAEL HARDER**, | |
| Defendant. | |

Scott Erik Asphaug, Acting United States Attorney, Kelly A. Zusman and Scott E. Bradford, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Robert Hamilton, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

This case presents a tension between two imperatives of justice: restitution for crime victim and finality for criminal defendants. In 2015, Defendant Jon Michael Harder pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1341 and one count of money laundering in violation of 18 U.S.C. § 1957. The parties, however, did not agree on the scope of the fraud, and the Court held an evidentiary hearing. The Government called 14 witnesses and offered more than 200 exhibits, and the Defense called seven witnesses, including Defendant, and offered more than 400 exhibits. After extensive briefing and argument, the Court concluded

PAGE 1 – OPINION AND ORDER

that between January 1, 2006 and July 7, 2008, Harder deceived, lied to, and misled more than 1,200 investors nationwide. Based on the Court's factual findings, the parties then agreed, for sentencing purposes, that Defendant's conduct caused actual losses that exceed $120 million. The parties also agreed that a correct calculation of the applicable U.S. Sentencing Guidelines resulted in an advisory guideline sentence of life imprisonment. The statutory maximum sentence that may be imposed, however, is 30 years, assuming consecutive sentences for the two counts of conviction. Sentencing Mem. & Order (ECF 207); Findings of Fact and Conclusions of Law at Phase I of Defendant's Sentencing Proceeding (ECF 169).

In the parties' plea agreement, the Government agreed to recommend a sentence of not greater than 15 years, and the Defendant agreed to recommend a sentence of not less than five years. Sentencing Mem. & Order (ECF 109), ¶ 11. The parties also agreed that Harder would be required to pay restitution to his victims, as follows:

> The Court shall order restitution in the full amount to the victims as required by law for the counts of conviction and determined by the Court. The defendant expressly consents to the entry of an order of full restitution for all victims that are outside the counts of conviction consistent with the court's determination in the initial sentencing proceeding of the scope of the defendant's scheme to defraud. The government anticipates that restitution will not exceed $130,000,000. In entering this plea, defendant acknowledges and understands that restitution may be as much as $130,000,000.

*Id.*, ¶ 9. The Court sentenced Harder to 15-years' imprisonment and ordered him to pay restitution in an amount to be determined by the Court after the Government provided the Court with restitution calculations. The Government, however, never provided those figures, and the Court never entered a judgment identifying a precise restitution amount.[1]

---

[1] Harder does not argue, nor does the evidence suggest, that the delay stemmed from anything more than the Government's negligence. When the Government's delay in seeking

Harder began serving his sentence in February 2016. In December 2017, the Ninth Circuit affirmed Harder's conviction and sentence. On January 13, 2021, then-President Donald J. Trump commuted Harder's prison sentence to time served but left "intact and in effect . . . all other components of [Harder's] sentence." Executive Grant of Clemency (ECF 267-2) at 1.

Now before the Court is the Government's Motion for a Second Amended Judgment Ordering Restitution (ECF 267). The Government asks the Court to amend the judgment and order Harder to pay $79,499,677.29 in restitution to his victims. Harder opposes the Government's motion. He argues that ordering restitution nearly six years after his sentence violates the Mandatory Victims' Restitution Act (MVRA) and the Due Process Clause. Harder also argues that ordering restitution after the President commuted his sentence violates the principle of separation of powers.

Because President Trump commuted only Harder's term of imprisonment, Harder's remaining sentence was left undisturbed. Ordering restitution, therefore, does not violate the principle of separation of powers. Nor does the Government's delay violate either the MVRA or Harder's rights under the Due Process Clause. Although the Government's conduct in waiting approximately five years to seek a specific order of restitution is not the model of diligence, the Government's delay did not prejudice Harder. When delay does not prejudice a defendant, Congress has expressed a strong preference for ensuring that victims of crime are fairly compensated, even at the expense of finality of a criminal defendant's sentence. Respecting Congress' policy preference requires the Court to order restitution here. The Court therefore grants the Government's motion.

---

restitution results from the Government's bad faith, a defendant may have a stronger argument that the Government has violated his due process rights. That, however, is not the case here.

## STANDARDS

The MVRA "emphasizes the importance of[] imposing restitution upon those convicted of certain federal crimes." *Dolan v. United States*, 560 U.S. 605, 612 (2010). Indeed, when enacting the MVRA, the Senate Judiciary Committee explained: "It is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that offender[s] be held accountable to repay these costs." S. Rep. 104-179, at 931 (1995). To that end, the MVRA requires federal courts to order a defendant convicted of a crime involving fraud or deceit to make restitution to his victims. 18 U.S.C. § 3663A(a)(1); *id.* § 3663A(c)(1)(A)(ii).

A court should enter an order of restitution at the time of sentencing. When "the victim's losses are not ascertainable by the date that is 10 days prior to sentencing," however, a court may "set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). Additionally, a victim who discovers losses arising from a defendant's criminal conduct after sentencing has concluded has sixty days following discovery of the loss to seek an amended restitution order from the court. *Id.*

Because, however, the MVRA "seeks primarily to ensure that victims of a crime receive full restitution," a court's failure to issue restitution within the 90 days does not deprive the sentencing court of the power to order restitution later. *Dolan*, 560 U.S. at 611-12. Indeed, the 90-day deadline is intended "primarily to help the victims of crime and only secondarily to help the defendant." *Id.* at 613; *see also United States v. Moreland*, 622 F.3d 1147, 1172 (9th Cir. 2010) ("[T]he intended beneficiaries of the MVRA's procedural mechanisms are the victims, not the victimizers.") (simplified). The Senate Judiciary Committee explained that although "the need for finality and certainty in the sentencing process dictates that the [restitution] determination be made quickly," "[t]he sole due process interest of the defendant being protected

during the sentencing phase is the right not to be sentenced on the basis of invalid premises or inaccurate information." S. Rep. 104-179, at 933 (1995).

## BACKGROUND

On November 17, 2015, the Court sentenced Harder to "180 months' imprisonment on [the mail fraud conviction] and 120 months' imprisonment on [the money laundering conviction], to be served concurrently, followed by three years of supervised release." Judgment (ECF 210) at 2-3. During the sentencing hearing, the Court "defer[ed] the determination of restitution for up to 90 days," Sentencing Mem. & Order (ECF 207) at 14. The judgment did, however, explicitly order Harder to pay restitution "to be determined within 90 days." *Id.* at 5. The Court also included as a condition of Harder's supervised release that Harder pay any "unpaid balance [of restitution] at the time of the [his] release from custody . . . at the maximum installment possible and not less than $1,000 per month." *Id.* at 3. On December 2, 2015, the Court issued an amended judgment to correct certain matters not relevant here. *See* Am. J. (ECF 219) at 3, 5. Harder unsuccessfully appealed his sentence, raising issues unrelated to restitution. *See United States v. Harder*, 705 F. App'x 643 (9th Cir. 2017).

On January 13, 2021, President Trump issued Harder an Executive Grant of Clemency. The recitals (*i.e.*, the "whereas" clause) in that document, describes Harder's sentence as "180 months' imprisonment, three years' supervised release forfeiture of approximately $115,810 and additional property (by order of July 1, 2015 and August 31, 2015), and a $200 special assessment." Executive Grant of Clemency (ECF 267-2) at 1. President Trump commuted Harder's term of imprisonment to "time served" but left "intact and in effect the three-year term of supervised release with all its conditions, and all other components of the sentence." *Id.* The Executive Grant of Clemency did not mention restitution.

On January 20, 2021, Harder was released from federal prison. Upon Harder's release, Harder's probation officer noticed that, although the "judgement [sic] dated December 2, 2015, mentions restitution will be determined within 90 days," the Court never ordered restitution. Probation Email (ECF 267-3) at 1. On April 16, 2021, the Government moved for an order directing Harder to pay $79,499,677.29 in restitution.

## DISCUSSION

Both counts of Harder's conviction involve fraud or deceit. Thus, the text of § 3663A requires the Court to order restitution. *See* 18 U.S.C. § 3663A(a)(1); *id.* § 3663A(c)(1)(A)(ii). Harder's primary argument is that the Court should deny the Government's motion because of the Government's delay in seeking restitution and President Trump's commutation of Harder's sentence. The Court addresses those arguments in turn.

### A. Statutory Deadline

Harder first argues that because the MVRA requires the Court to enter a restitution order not later than "90 days after sentencing," *see* 18 U.S.C. § 3664(e)(5), the Court may not enter a restitution order nearly six years after sentencing. Binding authority, however, explains that "because the procedural requirements of section 3664 were designed to protect victims, not defendants, the failure to comply with them is harmless error absent actual prejudice to the defendant." *Moreland*, 622 F.3d at 1173 (quoting *United States v. Cienfuegos*, 462 F.3d 1160, 1163 (9th Cir. 2006)); *see also Dolan*, 560 U.S. at 611 ("The fact that a sentencing court misses the [§ 3664(e)(5)'s] 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."). Thus, a court that expressly leaves open at the original sentencing hearing a determination of restitution may still order restitution after the MVRA's 90-day deadline, at least when doing so does not prejudice the defendant. *Id.*

A defendant may be prejudiced by delay if the defendant lacked notice of restitution, the delay deprived the defendant of documents or witnesses critical to his defense against restitution, or the defendant's financial status materially changed during the delay. *See Moreland*, 622 F.3d at 1173. Here, the Government's delay occasioned no such prejudice to Harder. Harder was on notice that he owed restitution both because he stipulated in his plea agreement to restitution not to exceed $130 million, *see Cienfuegos*, 462 F.3d at 1163 ("Cienfuegos was provided the functional equivalent of the notice . . . by the terms of his plea agreement"), and because during sentencing the Court expressly ordered restitution in an amount to be determined at a later date, *see Moreland*, 622 F.3d at 1173 ("Moreland was aware that an order of restitution would be part of his sentence, as the district court noted it on the record during the original sentencing hearing but deferred the calculation of the amount . . . ."). Harder also was "aware of the large amount of funds at issue based on the district court's findings to support the sentencing calculation." *Id.* Harder does not argue that his financial situation has materially changed or that he lacks access to critical documents or witnesses.

Instead, Harder argues that the delay prejudiced him because it deprived him of clarity about his restitution obligations during his quest for clemency. The United States Supreme Court in *Dolan*, however, addresses that issue: defendants who are unsure about the status of their restitution near or after the MVRA's deadline should ask the court for a restitution hearing and, if still denied, seek mandamus. *Id.* at 615-16. Harder did neither. Moreover, Harder could have requested that President Trump also commute the portion of the Court's judgment ordering Harder to pay an undetermined amount of restitution. Harder did not make that request. Because the Court during the original sentencing explicitly left open the specific restitution determination

PAGE 7 – OPINION AND ORDER

and because Harder is not prejudiced by the delay, the Court retains the authority—indeed, the legal obligation—to impose restitution.

## B. Due Process

Harder also argues that ordering restitution five and one-half years after he was sentenced would violate the Fifth Amendment's Due Process Clause. The Government's delay in seeking restitution can, in theory, be so great as to threaten the due process rights of a defendant. *See Dolan*, 560 U.S. at 616; *see also United States v. Brannon*, 476 F. App'x 386, 389 (11th Cir. 2012) ("[T]he *Dolan* Court . . . left open the remote possibility that a delay in setting a restitution hearing could prejudice a defendant and threaten his due process."). Whether a delay prejudices a defendant, as well as the length of, reason for, and identity of the party who caused the delay all inform the Court's due process analysis. *See Dolan*, 560 U.S. at 617.

As explained above, Harder does not show prejudice. That fact alone renders his due process argument unlikely to succeed. *See United States v Ray*, 578 F.3d 184, 200 (2d Cir. 2009) ("To prove a due process violation as a result of a sentencing delay, the prejudice claimed by the defendant, absent extraordinary circumstances, must be substantial and demonstrable."). That the Government's negligence caused the delay provides some support for Harder's position, but the Court notes that there is no basis for concluding that Government acted in bad faith. *Cf. Dolan*, 560 U.S. at 617 (discussing the role of "bad faith"). In addition, as the Supreme Court explained in another case in a different but analogous context, "different weights should be assigned to different reasons [for delay,]" and negligence is "[a] more neutral reason." *Barker v. Wingo*, 407 U.S. 614, 531 (1972) (announcing standards by which to consider a defendant's Sixth Amendment right to a speedy trial); *see Ray*, 578 F.3d at 200 (stating the same in a due process challenge to sentencing delays). Moreover, although it is fair to allocate to the Government the burden of its own mistakes, it is unfair to allocate the burden of the Government's mistakes to

the victims of Harder's crimes. *See Dolan*, 560 at 613-14 ("[T]o read the statute as depriving the sentencing court of the power to order restitution would harm those—the victim of crime—who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit."); *see also Moreland*, 622 F.3d at 1173 ("[R]estitution under the MVRA is not a right to be sought or waived by a prosecutor.").

That leaves the length of delay. Harder argues that the Government's five-and-a-half-year delay in seeking restitution infringes on his interest in the finality of his sentence. Finality of criminal judgments is an important component of the due process rights of criminal defendants. Inordinate delays in sentencing and appellate review of a criminal judgments—important steps on the path to finality—may violate due process. *See Betterman v. Montana*, 136 S. Ct. 1609, 1612 (2016) (sentencing); *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir. 1999) (appellate review). Additionally, the Federal Rules of Criminal Procedure contain several provisions designed to promote finality. *See* Fed. R. Crim. P. 32(b)(1) (instructing district courts to "impose sentence without unnecessary delay"); Fed. R. Crim. P. 33(b) (requiring a defendant to file a motion for new trial grounded on newly discovered evidence within three years of the verdict); Fed. R. Crim. P. 35(b) (limiting the circumstances under which the Government may move more than a year after sentencing to reduce a defendant's sentence because of the defendant's substantial assistance).

The length of the Government's delay in seeking restitution, however, does not by itself violate Harder's right to due process. The MVRA reveals that Congress was "determine[ed] to provide full restitution to victims of fraud *if at all possible*," even if restitution could only be accomplished after delay. *United States v. Cheal*, 389 F.3d 35, 49 (2d Cir. 2004). Without evidence that the delay prejudiced Harder, the Court must honor the balance that Congress struck

PAGE 9 – OPINION AND ORDER

in the MVRA between a defendant's interest in finality and a victim's interest in restitution. *See Dolan*, 560 U.S. at 611; *Moreland*, 622 F.3d at 1173. Indeed, other federal courts, respecting Congress' policy decisions, have countenanced similar delays. *See, e.g.*, *United States v. Wilson*, 2020 WL 5412976, at *2-3 (E.D. Ky. Sept. 9, 2020) (ordering two defendants to pay restitution jointly and severally with a third defendant five years after all three defendants were sentenced); *see also United States v. Dalicandro*, 711 F. App'x 38, 43 n.2 (2d Cir. 2017) (affirming on plain-error review a district court's restitution order entered five years after the defendant's sentencing).

## C. Executive Grant of Clemency

Finally, Harder argues that then-President Trump discharged any restitution that Harder may have owed when the President commuted Harder's term of imprisonment. The President has the "Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1. The purpose of the commutation power is "to reduce a penalty in terms of a specified number of years, or to alter it with conditions which are in themselves constitutionally unobjectionable." *Schick v. Reed*, 419 U.S. 256, 266 (1974).

"[A] presidential commutation does not overturn the sentence imposed by the sentencing court." *United States v. Buenrostro*, 895 F.3d 1160, 1164-65 (9th Cir. 2018); *see also Dennis v. Terris*, 927 F.3d 955, 958 (6th Cir. 2019) ("Generally speaking, a prisoner who receives a presidential commutation continues to be bound by a judicial sentence."). When a President commutes a sentence, any portion of the sentence the President commutes is satisfied, but those portions not commuted "remain[] operative in part, and it requires the exercise of the function of the court in order that the commuted judgment may be executed." *Duehav v. Thompson*, 223 F. 305, 307 (9th Cir. 1915). An "altered sentence," therefore, does not become "an executive sentence in full, free from judicial scrutiny." *Dennis*, 927 F.3d at 960. "The original judicial

PAGE 10 – OPINION AND ORDER

sentence remains intact" after a commutation, but the Court may not act on the judgment in a way that contradicts the commutation. *Id.*

Then-President Trump commuted only Harder's prison sentence and did not say anything about restitution. *See* Executive Grant of Clemency (ECF 267-2) at 1 ("I commute the prison sentence imposed upon the said Jon Michael Harder to time served. I leave intact and in effect the three-year term of supervised release with all its conditions, and all other components of the sentence."). The Government argues that because the commutation is silent about restitution, it is not contrary to the commutation for the Court to order restitution. In response, Harder argues that because restitution was not part of the sentence that President Trump commuted, the Court cannot now add restitution.

Harder's argument is not persuasive. First, it is not accurate to say that restitution was not part of Harder's original sentence. In Harder's original sentence, the Court expressly ordered restitution, albeit in an amount to be determined later. At the Court's explicit direction, the words "to be determined within 90 days" was inserted under the heading "Restitution." *See* Am. J. (ECF 219) at 5. Additionally, the Court included an obligation to continue to pay any outstanding restitution as a special condition of Harder's supervised release. *See id.* at 3. Harder agrees that restitution awards are within the scope of the president's commutation power. Thus, then-President Trump could have affirmatively discharged Harder's restitution obligation. He did not. Indeed, President Trump chose to leave undisturbed Harder's term of supervised release, which included the special condition that Harder pay restitution. *See id.*

Second, Harder appears to argue that President Trump's commutation is a sentence of its own. "[A] presidential commutation, however, does not overturn the sentence imposed by the sentencing court," *Buenrostro*, 895 F.3d at 1164-65, or transform the sentence into "an executive

PAGE 11 – OPINION AND ORDER

sentence," *see Dennis*, 927 F.3d at 960. Instead, the Court retains authority over portions of Harder's sentence unaltered by President Trump. The only portion of Harder's sentence that President Trump altered is Harder's term of imprisonment. Thus, the commutation does not prevent the Court from ordering restitution.

Finally, Harder asks the Court to apply the rule of lenity to any ambiguity that may be found in the commutation. There is nothing ambiguous, however, in the Grant of Clemency. Further, the rule of lenity counsels that courts should narrow the scope of criminal liability when the text defining that liability is ambiguous. *See United States v. Harrell*, 530 F.3d 1051, 1058 n.3 (9th Cir. 2008). Commutations do not *impose* criminal liability, they *relieve* it. Thus, the rule of lenity is inappropriate here.

## CONCLUSION

The Court GRANTS the Government's Motion for Second Amended Judgment Ordering Restitution (ECF 267). Within 14 days of the date of this Opinion and Order, the parties either shall file a stipulation (without prejudice to Harder's right to appeal) relating to the precise amount of restitution to be ordered and a list of the victims entitled to recover restitution or shall contact the Courtroom Deputy to schedule an evidentiary hearing on any remaining disputed factual matters.

**IT IS SO ORDERED**.

DATED this 2nd day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge